May it please the court, counsel. There was no reasonable strategic explanation in this case for defense counsel in a jury trial in which he was asserting self-defense to have not objected during closing argument when the prosecutor misstated the evidence by saying that, quote, everyone agrees, unquote, that the defendant had been the aggressor, had been the first to draw a knife in a knife fight. The defendant did not agree. The witnesses did not agree. Defense counsel surely did not agree, but he did nothing. He made no objection. The error was prejudicial because it affected the critical factual issue in the case. Wasn't it perfectly clear by the end of the arguments, Trotsky's arguments and the defense argument and so on, that, you know, who actually said what? As we see it, the case comes down to two admissions. The first is the victim in his testimony admitted that he had been the first to draw a knife and the first to swing a knife. Second, and that's in the excerpt at pages 91 and 92. Second, the State conceded the fact in the post-conviction case. The State conceded that those facts were true, and that's in the excerpt at page 150. But that wasn't what I asked you. What I asked you was that the prosecutor said that in passing, but he later said he also said more discreet things that were reflective of the detail, and the defense lawyer went into some detail over who said what. So what was the problem? I don't believe that the prosecutor ever stated the facts correctly in his closing. And the defense counsel let the statement go unchallenged, and that's the problem. By waiting until it was his turn to get up and speak, he allowed that bell to go unrung, to remain in the jury's ears until the damage had been done. Beyond that, he never really corrected the problem in his own closing. Although he presented the jury with some of the facts regarding witness testimony, defense counsel never said in his closing that the prosecutor had stated the facts incorrectly. He never stated in his own closing that the victim had admitted swinging the knife first. So even having a chance to fix the damage that he allowed to occur during the prosecutor's closing, given the chance to correct it, he didn't do it. He let it go. Doesn't some of that get chalked up to tactical decisions that a defense counsel makes in the course of deciding what to emphasize and what not to emphasize in his final argument, and ultimately isn't it cured by the judge's instructions to the jury that it's your recollection of the facts that controls? Not here. We can see no technical reason for defense counsel to remain silent at that point in a closing on the critical fact in a defense case. There was certainly no adverse inference to be drawn from pointing it out. He wasn't going to point the jury toward a bad fact by bringing more attention to it. He hadn't interrupted the prosecutor once. He wasn't going to make himself look bad by appearing discourteous or rude. He certainly couldn't have found the prosecutor's statement that everyone agrees to have been helpful to his case. This Court's decision in the Molina case, which the Respondent cited in her brief, pointed toward some of those conceivable tactical reasons for remaining silent. Would it have been a sign of desperation or hyper-technicality to have pointed that out? Surely not. Let me ask you a question, a little bit different question. Where in your petition to the State Court do you make any allegation that counsel failed to object to the misstatement by the prosecutor about who brandished the knife first? I mean, I looked all the way through your petition to the State Court and I don't find it. The State Court petition raised the allegation more generally. More generally? The State petition. So you can, it's your argument then that you can just say ineffective assistance of counsel and come to our court and argue any theory you come up with on ineffective assistance? Surely that's not what we're saying here and it's not what happened in the State Court. Well, but in the State Court there's no allegation that they failed to object to misstatements by the prosecutor about who brandished the knife first. In fact, I didn't find anything in your post-conviction trial memo, in your oral argument, in your briefing on the appeal. In fact, I'm having a tough time even finding that argument when you were in front of the District Court. Well, let me respond in two ways. First of all, we did assert it clearly in the District Court and the District Court addressed it on the merits. All right. That would be the best you could come up with. The District Court did address it on the merits. Well, not only did the District Court address it on the merits, the State defended it on the merits in the State post-conviction case. But the State did put a footnote in its District Court brief saying that there was procedural default. Let me address the footnote, if I might, and then come back to Judge Smith's question. This Court has stated repeatedly that the issue of procedural default is waived if the State doesn't raise it properly in the District Court. The State didn't raise it properly here. First, the State raised it in a footnote. And let me quote the footnote, which characterized the claim as an objection, quote, to the accuracy of the contents of the prosecution's closing argument, end quote. That's not the claim here. We're not claiming simply that the prosecution's closing argument was inaccurate. We are claiming ineffective assistance of counsel for failure to object to that argument. The State doesn't address that whatsoever in the footnote. Beyond that ---- Well, as I understand the law, and Kelly, be small, what one has to say is one has to describe in the State proceedings, and I'm now reading, both the operative facts and the Federal legal theory on which this claim is based, so that the State's courts had a fair opportunity to apply controlling legal principles. I didn't see anything in there that the State court would have been able to do that with what you're arguing about today. The State post-conviction court at the trial level ruled on the merits. On appeal, in the Petitioner's brief before the Oregon Court of Appeals, the issue was raised explicitly on the merits as we have raised it here, and it was re-raised again in a petition for review before the Oregon Supreme Court. The State would have had an opportunity to defend on appeal in the State courts based on failure to raise it in the trial court. To my knowledge, they did not. I have to change the subject again. It isn't really clear to me that it's inaccurate to say that the defendant pulled the knife first. I mean, what Alan testified to, as I understand it, was that he saw his hand go up, and he thought he could have the knife in his hands. And, in fact, he did have the knife in his hands, and that's when he pulled his knife. So when he said, I pulled my knife out first, the first was before he – he, Alan, drew his knife and swung, but not before Alan pulled the knife. Not before Roy pulled the knife. I'm sorry. In other words, I don't think – I'm not convinced that was an inaccurate statement. Let me quote to you what the State said in the defendant's trial memorandum. I don't want to know that. I want to know what actually happened. What actually happened is that the victim drew and swung his knife first. The State said they were – I want to know what was said. What was said was – what Alan said was you drew that knife out before you actually saw Mr. Roy Wilkerson's knife. Is that correct? Yes, that's correct. I pulled the knife out when his fist came up, because I didn't know if he had a knife. He knew he had a knife. I didn't know if he had a knife in his hand, if it was in your back pocket or where it was when his fist came up. The knife came out. And then he says, you – I pulled my – it was inaccurate that he, Alan, drew his knife and swung. He said, yes, I pulled my knife out first. That is before he swung the knife. I pulled my knife out first, before there was any swinging. Yes, when his fist came up, I pulled the knife out. Yes. And we know from other testimony that when he pulled – when his fist came up, he had the knife. And so it's not even – it's not an accurate statement. It was what the prosecutor said was accurate. It was not. Why? Alan Wilkerson said, I pulled my knife out first. But first before what? Then he admitted to two other witnesses, who also testified at trial, did he – he said he swung first. He presented the knife first. He swung first. He swung first. That's different from he pulled the knife first. And I have to go back to the State's concession in the State courts that our position is correct. The State said there was no doubt that the victim pulled his knife first and that he swiped with it. Let me ask you – Those are the facts. Let me ask you one other question. Under Oregon law, if one asserts self-defense, the State must disprove the defense beyond a reasonable doubt. But that does not mean the prosecution cannot comment on the evidence that your client has to offer in claim of – in support of his claim of self-defense. And it may also comment on the absence of evidence of self-defense. It seems to me that that's exactly what happened here and that you're just arguing Oregon law is wrong. We're not arguing that Oregon law is wrong. We're arguing that the prosecutor crossed the line by not drawing – but not by drawing Is it not true, counsel, that the prosecution can comment on evidence that has been offered and he can comment on the lack of any evidence? The prosecution can comment, but the prosecution cannot explicitly misstate evidence to say that the evidence was something other than what it was. And, again, our objection here is – goes to what defense counsel failed to do. To point that out. I'm over time. You are over time. Thank you. Thank you. Good morning. May it please the Court. Counsel, Cecil Rennes-Smith on behalf of the Respondent Sharon Blackadder. I'd like to briefly address the procedural default issue first because that is a threshold issue. And the first thing I would like to point out is that counsel cut his quotation of the infamous footnote short. And the footnote fully stated, To the extent petitioner is objecting to the accuracy of the contents of the prosecution's closing arguments in terms of who pulled out the first night, this claim is procedurally defaulted. And so the State has clearly identified the issue that was not raised in the State courts by saying, The petitioner didn't raise it in his brief son of heel from the post-conviction judgment. It wasn't raised in the State petition. And I know that petitioner believes that footnote was insufficient to raise the issue in order to not waive the procedural default defense. But, really, what more is there to say at that point? It wasn't raised below. It's therefore not properly before the district court. Did the State's trial court decide it? I'm sorry? State's trial court and post-conviction review, did it decide the question? It did not address the question of the misstatement of facts. It was all based on the shifting of burden of proof issue, which had to do with two completely different statements that the prosecutor made. The one statement about everyone agrees that petitioner pulled, petitioner characterizes it as everyone agrees that petitioner pulled the knife out first. That was a different statement from the statements that petitioner complained about in the State court. In the State court, petitioner claimed about comments that the prosecutor made about telephone conversations he had with his mother from the jail and comments about the lack of evidence to support the self-defense claim. Nothing about the issue of who pulled the knife out first. So that was never addressed in any of the State court proceedings, and so it wasn't properly before the district court. The district court did reach that issue on the merits, and the Franklin decision. The federal district court. The district court did reach it on the merits. Nothing in the State court. Nothing in the State court. Correct. I'm just trying to make sure. Yes. And the fact that the district court did reach the merits should not preclude this court from saying it was procedurally defaulted. It is possible when a claim is completely non-meritorious to leap over the procedural default issue and deny on the merits. And so the fact that the district court did that doesn't mean that the procedural default defense was waived. I don't really have anything more to say on that issue unless the court has other questions. As to the merits, as you know, the State's first argument is that there was no misstatement of the facts. There was no inaccuracy. And both prosecution and defense counsel spent a lot of time in their closing arguments on that issue and in our exits of record and supplemental exits of record. We've provided the court with excruciating detail of those arguments, but a lot of it, again, comes down to what exactly was said. And what exactly was said by the prosecutor was that everyone agreed that Allen didn't draw his knife until Petitioner put his hand up. That Fack had the knife at that time, even though Allen didn't see it. Allen didn't see it, but two other witnesses did. Allen's son, Michael, and a friend of the family named Deanna Plew. But also it turned out he had the knife because, I mean, Allen eventually knew he had the knife. Correct. What exactly was the son's testimony, if you have it there? I thought it was to the effect that he thought it would, that Roy drew his knife first. I can paraphrase it. That's okay. You can paraphrase it. What the son testified was that he was standing at a different angle from Allen, and what he saw was that when Petitioner's arms came up, Petitioner dropped his coat and an empty knife case on the hood of the car, and his arms came up and he was holding his combat knife so that the blade ran down his arm. So he had the hilt of the knife in his hand, blade down his arm, and then he – I can't even begin to try and do this. Apparently Michael actually came down from the stand and demonstrated it. But he did a maneuver where he swung the knife around so that the blade was now – and that's when he cut at Allen. And there was testimony from Allen and Michael that Petitioner carried this knife all the time and was very good with this knife and was very proud of his knife-handling skills and did things like this all the time. Was the gist of the testimony that this happened first? That's what I'm getting at. The gist of the testimony was – and everyone did agree to this – that Daryl Petitioner's arm came up before Allen drew his knife. It was when Petitioner raised his hand that Allen drew his knife. Allen, indeed, testified that he did not see a knife in Petitioner's hand at that time when he drew his knife, but he did see Petitioner's hand come up. He knew Petitioner carried the knife, and he'd seen the empty knife case fall on the hood of the car. And so – and that is what the prosecutor was talking about, that everyone agreed that it was only after Petitioner raised his hand that Allen – And in fact had the knife. In fact. And in fact had the knife. And he in fact had a knife when he did that, yes. As to whether the defense counsel may have had a strategic reason not to object at that point, assuming that there was a mischaracterization or an inaccuracy, there are many reasons that defense counsel may choose not to object to something, especially in a case like this where you did have a lot of conflicting evidence about what was going on, who was saying what to whom and when. And instead he may have chosen to just wait until his own argument and give the jury his own version of the facts, Petitioner's own version of the facts, which is exactly what happened in this case. And defense counsel in his turn pointed out that Allen had said he drew his knife first, pointed out that the defense had called two witnesses that the prosecution hadn't even mentioned in its closing argument who would say Allen talked to us two days later and told us he drew the knife first. And so instead of arguing the strategic purpose could have been I'm just going to get up, I'm going to make the best argument I can to show how the facts actually were, that Allen was the aggressor, that Petitioner was not the aggressor, rather than disrupt closing argument. And in his brief I understand Petitioner makes, points out that there's not an affidavit from the defense counsel saying I made a strategic decision not to do this. But the case law is very clear that as long as there's nothing in the record that would preclude a finding of a strategic reason you don't have to have that strategic reason stated by the defense counsel. There just has to be a strategic purpose that can be identified by the court. And if that can, then the presumption of competence weighs in. I'm going to change again to what I talked to counsel about, and that was about the self-defense claim here or the claim that they switched the burden on the self-defense. It seems to me that what we're talking about is the T-shirt, the T-shirt in evidence. Maybe it's the knife, maybe it was with the knife, all of that. Now the state court said that the comments were improper. Yes, the state court did say that. The state would disagree with the state court's determination that they were improper. That was a speaking finding. But, yes, the state court did say that it was improper. That it was improper, then it came to the tactical decision not to object. Don't I have then, am I really stuck with the tactical decision not to object? I mean, there's a strong inference of correctness here. Right. Well, there's a strong inference that the state court was correct, and that is what it is. I would say that the record doesn't support that finding, and if the record doesn't support that finding at all, if it's inconsistent with the record, then it's the same as on the flip side, presuming the competence of the defense counsel. If there is something in the record that would make that finding of competence clearly unsupportable, then this court wouldn't be bound by it. I would say it's the same thing, that if the state court's finding of no impropriety is clearly unsupported by the record, then this court is not bound by it. But in any event, even if this court assumes they were improper statements, there was a reasonable tactical decision for the attorney not to object. And also, as I put forth in the brief, I don't have time to discuss it at the moment, but there was no prejudice. In any event, there was no prejudice. Okay, thank you very much. Thank you. Thank you to both counsel. The case of Wilkerson v. Blackett is submitted. And we will go to the Center for Biological Diversity v. U.S. Bureau of Land Management, Ruby Pipelines, Summit Lake Paiute Tribe, et cetera. Thank you. Thank you. Thank you. At the top of the outset, if the appellant's lawyers would tell us what they've decided with regard to whether the time is going to be as we allocated it or otherwise, because we said you could either do it that way or tell us something else. So why are we doing it? Thank you. Good morning. Eric Lichtenstein on behalf of the Defenders of Wildlife and Center for Biological Diversity. The time allocation is essentially as the Court prescribed. I'm going to spend 20 minutes at the outset on issues that we've addressed, principally the Endangered Species Act issue with the permission of the Court. I think the tribes are then going to go and split up their 20 minutes, and I think the county attorney then is going to go for 10 minutes at the end of our presentation. Okay. Now, I'm not placing this, so would you please do so, i.e., stop when you get to your 20 minutes? Yes, Your Honor. I will try to tell you when it appears to me that you're running over, but I'm sorry? I was just going to say it seems to me that you really do need to police this just a little bit, as my good colleague has said, because sometimes we get in the middle of asking questions and we don't think about it, and you take your colleague's time, and if you didn't have Honorable Berzon, who's pretty nice to everybody and wants everybody to have a chance to talk, and instead had Chief Judge Kaczynski, there'd be some who wouldn't get any chance to talk at all. So I'm just trying to help you there, as he is. I appreciate that, Your Honor. There were many of them and only one of me, so I would be in a lot of trouble if I didn't do that. Okay.
judges: Smith, Berzon, Smith